UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

NADJARE CHARLES EVANS,

     Plaintiff,

v.                                                        Case No. 1:26-cv-139-MW-HTC

ROBERT GROEB, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Nadjare Evans, proceeding *pro se*, has filed a complaint alleging a variety of claims related to child support proceedings brought against him in state court. Doc. 1. However, after reviewing the complaint, the undersigned concludes this case should be *sua sponte* DISMISSED without prejudice because: (1) Evans' claims are meritless and based on theories associated with the sovereign citizen movement; (2) the relief he seeks is barred by the *Rooker-Feldman*[1] and *Younger*[2] abstention doctrines; (3) he sues Defendants who are immune from suit; and (4) he fails to state a claim for relief.

---

[1] The doctrine derives its name from two cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).
[2] *See Younger v. Harris*, 401 U.S. 37 (1971).

## I.    Background

Evans sues seven (7) Defendants: (1) Robert Groeb, a circuit court judge; (2) Samuel Stafford, a child support hearing officer; (3) Pamela Schneider, an attorney with the Florida Department of Revenue ("FDOR"); (4) Jess Irby, the Clerk of Court for Alachua County; (5) James Zingale, the FDOR's Executive Director; (6) Ann Coffin, the FDOR's Child Support Program Director; and (7) Clovis Watson, Jr., the former Sheriff of Alachua County.  Evans' complaint contains the following factual allegations.

In 2002, a petition for child support was filed against Evans in Alachua County.  *See Fla. Dep't of Revenue et al. v. Evans*, Alachua County Case No. 2002 DR 378.  On April 22, 2021, Evans "formally entered a structural ledger challenge and financial tender directly onto the record" of the child support case, "enclosing formal performance instruments including GSA Forms SF24, SF25, and SF25A to fully secure, satisfy, and close the administrative case file."[3]  On April 24 and 26 of 2021, authorized agents for Clerk of Court Jess Irby and Judge George Wright confirmed receipt of "the posted security assets to the private administrative enterprise."  Thus, as of April 26, Evans says "a valid, formal financial bond was formally logged directly onto the public court docket" for the case.  Despite the

---

[3] General Services Administration Forms SF24, SF25, and SF25A, titled Bid Bond, Performance Bond, and Payment Bond, respectively, are standardized forms that are used in connection with contracting with the federal government.  *See* https://www.gsa.gov/forms-library?footer=gsa.

posting of the "bond," the Defendants "bypassed the security asset" and initiated a non-judicial suspension of Evans' driver's license.

At a hearing held on April 26, 2021, Hearing Officer Stafford "presented a verbal conditional offer," mandating that Evans' license would remain suspended unless he "submitted to financial payment terms outside of the posted bond." Evans complains that Judge Wright had notice of the "alternative security asset" on April 26, before he signed a final order on December 8, 2021, which "bypassed the ledger dispute" and "handed the administrative enforcement pipeline" to Judge Groeb to execute the writ of bodily attachment.[4] Doc. 1-14.

Evans also complains about his outstanding child support balance. He says the hearing officer "used a ledger snapshot frozen on April 14, 2021, to claim [he] owed $19,444.86." He notes Judge Wright found he had no current obligation and only needed to pay $275 a month toward the arrears. The outstanding balance dropped by "nearly $6,000" between 2021 and 2025 but then it increased by $3,025 in 2026 "without a single new court order." Evans contends the "private contractors

---

[4] "In Florida, a court will issue a writ of bodily attachment for unpaid child support if it determines, by a preponderance of the evidence, that a person is liable for civil contempt. Specifically, the court must find 'that a prior order directing payment of support was entered and that the alleged contemnor has failed to pay all or part of the support set forth in the prior order.'" *United States v. Phillips*, 834 F.3d 1176, 1180-81 (11th Cir. 2016) (citations omitted). Evans refers to the writ of bodily attachment as an arrest warrant, and the undersigned will do the same in this Report and Recommendation.

are running an automated billing algorithm that generates numbers completely independent of the actual judicial record."

On January 25, 2023, Evans mailed an "affidavit of want of authority" and a "financial disclosure stack" to the court. The "stack" included "an IRS Form W-9 and a formal notice of ledger dispute involving CUSIP 315792556," and it was contemporaneously transmitted to the IRS, the SEC, and other federal regulatory bodies "to report the unauthorized commercialization and hypothecation of the administrative case records." Neither the Defendants nor the federal agencies issued a rebuttal or response, "thereby establishing total administrative acquiescence and default on the public record."

On March 28, 2023, Stafford signed an order of noncompliance and recommended the issuance of an arrest warrant for Evans. Doc. 1-9. Later that day, Judge Groeb adopted the recommendation and issued an arrest warrant with a $320 cash-purge mandate. *Id.*; Doc. 1-10. The Alachua County Sheriff's Office deployed personnel to execute the "non-criminal writ, financially incentivized by a contractually guaranteed $46.20 transaction fee per body."[5] Evans believe the arrest warrant was issued in retaliation for his January 2023 court filings, to punish him

---

[5] It does not appear Evans has been seized pursuant to the March 2023 arrest warrant, as he alleges it is "active" and he seeks an injunction voiding it.

"for exposing the underlying performance contracts and filing a formal financial ledger dispute."

In addition, Evans alleges the Defendants are independent contractors because they are engaging in child support enforcement actions pursuant to contracts with the FDOR that indicate they are not state employees and cannot bind the state. Thus, Evans claims the Defendants are not entitled to qualified or absolute immunity and cannot "exercise sovereign state enforcement power" such as by issuing arrest warrants or suspending drivers' licenses.

Based on the foregoing, Evans alleges the Defendants violated the First, Fourth, Seventh, Thirteenth, and Fourteenth Amendments. He also brings an unjust enrichment claim. As relief, he seeks: (1) an injunction voiding the arrest warrant issued on March 28, 2023, and lifting the suspension of his driver's license; (2) a declaration that the Defendants operate as "private independent contractors" and cannot invoke judicial or qualified immunity; (3) an injunction closing the child support case and vacating the arrears he allegedly owes; (4) restitution of all the funds he has paid in child support; and (5) compensatory and punitive damages.

## II. Legal Standard

By moving to proceed *in forma pauperis*, Evans has invoked the screening provisions of 28 U.S.C. § 1915(e)(2)(B). *See Whitted v. Sarasota Mem'l Hosp.*, 2024 WL 4392784, at *1 n.1 (M.D. Fla. Oct. 3, 2024) (construing a *pro se* litigant's

Case No. 1:26-cv-139-MW-HTC

"failure to pay the filing fee as a request to proceed *in forma pauperis*" when screening and dismissing his complaint as frivolous under 28 U.S.C. § 1915(e)(2)(B)). Under § 1915(e)(2)(B), the Court must dismiss Evans' complaint, or any portion thereof, if it determines the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

## III.   Discussion

This action should be *sua sponte* dismissed without prejudice because: (1) Evans's claims are based on frivolous legal theories, including some that are associated with the sovereign citizen movement; (2) his claims for injunctive relief are barred by the *Rooker-Feldman* and *Younger* abstention doctrines, as he seeks to overturn state court decisions and interfere with ongoing enforcement actions; (3) he sues a judge and child support hearing officer who have immunity; and (4) he fails to state a claim for relief.

### A.   Sovereign Citizen

As an initial matter, most of Evans' claims derive from the allegation that he submitted a "bond" or "financial tender" to the court in his child support case and, by doing so, he either satisfied his child support obligation or created a "ledger dispute" which prevented enforcement of the obligation until resolved. Doc. 1 at 7; *see also id.* at 13 (alleging Defendants violated his due process rights by issuing an

Case No. 1:26-cv-139-MW-HTC

arrest warrant and suspending his driver's license "while knowingly bypassing a valid, pre-existing financial bond logged on the public docket"); *id.* at 14 (alleging the arrest warrant lacks "lawful authority" and violates the Fourth Amendment because "the underlying administrative case was already secured by a valid posted bond"); *id.* at 16 ("Bypassing a posted financial bond to demand duplicate cash payments under threat of physical imprisonment [violates] the Thirteenth Amendment."); *id.* (alleging Defendants were unjustly enriched by "the unauthorized retention and locking of Plaintiff's valid financial bond … while concurrently misrepresenting the case profile as an open, unpaid debt").

The notion that an individual can magically extinguish a debt by filing certain paperwork is a theory associated with the sovereign citizen movement. *See Thomas v. All In Credit Union*, 2023 WL 9197752, at *8 (S.D. Ala. Dec. 7, 2023), *report and recommendation adopted*, 2024 WL 312682 (S.D. Ala. Jan. 25, 2024) ("Thomas' amended complaint raises frivolous sovereign citizen claims that appear to be based on a theory that Thomas somehow has the ability to essentially convert a payment demand into legal tender and magically extinguish his debts."); *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212 (D. Conn. June 11, 2010) (noting the "essence" of the sovereign citizen "vapor money" theory "is that promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures"); *see also Gravatt v. United States*, 100 Fed. Cl. 279, 282 (Fed.

Cl. 2011) ("So-called sovereign citizens … employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings.").

Courts, however, have repeatedly recognized that such theories are frivolous and subject to summary dismissal. *See United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (noting courts have "summarily rejected [sovereign citizen] legal theories as frivolous"); *Engel v. Corizon*, 2021 WL 1105351, at *3 (E.D. Mo. Mar. 23, 2021) ("Arguments based upon sovereign citizen ideology have been summarily rejected as frivolous and irrational in this Circuit and in other federal courts around the nation."). Thus, claims based on allegations that the Defendants' conduct was unlawful because Evans posted a "bond" in the child support case are frivolous and should be dismissed.

### B.    *Younger v. Harris*

"The *Younger* doctrine bars federal court intervention in state noncriminal proceedings where the proceedings constitute an ongoing state judicial proceeding, the proceedings implicate important state interests, and there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Adams v. State of Florida*, 185 F. App'x 816, 816-17 (11th Cir. 2006) (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003)). "The ability to collect child support payments is an important state interest." *Id.* at 817.

Here, Evans seeks an injunction that would void an outstanding arrest warrant, restore his driving privileges, and terminate the child support case against him. This relief would clearly interfere with the state court proceedings and the FDOR's enforcement efforts. *See id.* (affirming dismissal of § 1983 complaint under *Younger* that sought to enjoin "a civil contempt finding accompanied by a threat of jail" in a child support enforcement case). Furthermore, Evans does not allege he cannot raise his constitutional challenges in either the trial or appellate court. *See Leonard v. Ala. State Bd. of Pharmacy*, 61 F.4th 902, 909 (11th Cir. 2023) ("To demonstrate that claims are procedurally prevented in state tribunals, plaintiffs should provide evidence of state laws, rules, or procedures that would allow a district court to evaluate whether the plaintiff's federal claims will effectively be shut out from the judicial system and cut off from effective review in the courts."). Thus, under *Younger*, Evans cannot seek injunctive relief which would interfere with his child support case. *See Pompey v. Broward County*, 95 F.3d 1543, 1550 (11th Cir. 1996) (affirming dismissal of claims for injunctive relief under *Younger* and warning "of the problems that would arise if the federal district court were to arrogate to itself the role of overseer of Broward County's child support enforcement proceedings").

## C.    *Rooker-Feldman* Doctrine

Evans asks the Court to vacate all the arrears he owes and to return all the money he has paid in child support since the case began in 2002. To the extent such

Case No. 1:26-cv-139-MW-HTC

relief invalidates any judgment in the child support case, the Court does not have jurisdiction to entertain the request under the *Rooker-Feldman* doctrine, which prohibits a district court from exercising subject matter jurisdiction over complaints "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Evans cannot use this case as a vehicle to relitigate the adverse determinations of the state court. *See Brown v. Coffin*, 766 F. App'x 929, 931-32 (11th Cir. 2019) (holding *Rooker-Feldman* doctrine barred claims that asked the federal court to review and reject final state court child-support and enforcement orders, including "claims that the Florida Department of Revenue and its Director violated [plaintiff's] constitutional rights by obtaining orders to garnish his tax return and suspend his driver's license")[6]; *Redford v. Gwinnett Cnty. Judicial Circuit*, 350 F. App'x 341, 345 (11th Cir. 2009) (holding *Rooker-Feldman* barred complaint that "was an explicit attempt to use the federal courts to overturn the Georgia state courts' decisions regarding [plaintiff's] … child support obligations, and to attack the legality of his incarceration for refusing to pay

---

[6] In *Brown*, the Eleventh Circuit also noted: (1) the plaintiff's "challenges to the state magistrate's authority, the process afforded him, and the validity of the child support statute could have been raised in the state court proceeding and on appeal, in accordance with Florida law"; and (2) "to the extent [the plaintiff] believes the state-court orders were delivered without authority, he must seek a remedy in state court, since his claim invites review and rejection of the state-court judgment by asking the federal court to determine whether it was wrongfully issued." 766 F. App'x at 932.

child support"); *Jackson v. Dep't of Human Resources*, 533 F. Supp. 3d 1100, 1105-06 (M.D. Ala. July 20, 2020) (dismissing complaint under *Rooker-Feldman* doctrine where plaintiff asked the court "to terminate the current private for profit contractually enforced IV-D case" and refund all payments made).

### D.    Judicial Immunity

Evans seeks damages for Judge Groeb and Hearing Officer Stafford's conduct during the child support proceedings.  However, Judge Groeb is entitled to absolute judicial immunity.  *See Higdon v. Tusan*, 746 F. App'x 805, 810 (11th Cir. 2018) ("A judge is entitled to absolute judicial immunity from damages for actions taken while acting in her judicial capacity, unless she acted in clear absence of all jurisdiction.") (internal citation omitted); *see also Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985) (holding that judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff").

In addition, while Defendant Stafford is not judge, he is protected by quasi-judicial immunity because, as a child support hearing officer, his "responsibilities … are functionally comparable to those of a judge."  *Hutcheson v. Campbell*, 2023 WL 2352845, at *3-4 (M.D. Fla. Feb. 13, 2023), *report and recommendation adopted*, 2023 WL 2351691 (M.D. Fla. Mar. 3, 2023) (concluding child support hearing officer had absolute quasi-judicial immunity for claim that he denied plaintiff due process by suspending his driver's license); *see also Higdon*, 746 F. App'x at 811

("Non-judicial officials are encompassed by a judge's absolute immunity when their official duties have an integral relationship with the judicial process.") (citation omitted).

Evans suggests Groeb and Stafford are not entitled to judicial immunity because they are "independent contractors," but Florida law provides that circuit court judges and hearing officers have the authority to take the actions Evans now challenges. *See Austin v. Mullins*, 2025 WL 2030051, at *2-3 (11th Cir. July 21, 2025) (affirming dismissal of complaint against circuit court judge and hearing officer based on judicial immunity because conducting a hearing and entering orders in plaintiff's child support proceedings "constituted normal judicial functions and fell well within the family court's jurisdiction"); Fla. Fam. L. R. 12.491(e) (stating a hearing officer "shall be empowered to issue process, administer oaths, require the production of documents, and conduct hearings for the purpose of taking evidence," and make recommendations to the court). Thus, notwithstanding Evans' conclusory assertions to the contrary, he cannot seek damages against judges and hearing officers.

E.      Seventh Amendment

Evans alleges the Defendants violated the Seventh Amendment by not providing him a jury trial during the child support proceedings. However, the Seventh Amendment "governs proceedings in federal court, but not in state court."

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 432 (1996).   Thus, Evans cannot state a Seventh Amendment claim.  *See Phillips v. Gwinnett Cnty. Superior Ct.*, 2025 WL 3452453, at *4 (N.D. Ga. Nov. 6, 2025) ("Because Plaintiff alleges a deprivation of his right to a jury trial in a state court-based child support proceeding, his Seventh Amendment claim fails.").

### F.    Thirteenth Amendment

Evans alleges the Defendants violated the Thirteenth Amendment by forcing him to submit to "an administrative, non-discretionary funding program for personal fee generation" through driver's license suspensions and arrest warrants.   The Thirteenth Amendment abolishes slavery and involuntary servitude, except as punishment for a crime, U.S. Const. amend. XIII, § 1, but "[c]hild support obligations or the enforcement of child support obligations are not the type of subject matter the Thirteenth Amendment was designed to address because [the government] does not employ the use of physical or legal coercion to force [Evans] into involuntary servitude." *Bianchi v. Coffin*, 2023 WL 12078258, at *4 (M.D. Fla. Dec. 21, 2023), *report and recommendation adopted*,  2024 WL 5671936 (M.D. Fla. Jan. 10, 2024).   Thus, Evans cannot state a Thirteenth Amendment claim.  *See Greenberg v. Zingale*, 138 F. App'x 197, 200 (11th Cir. 2005) (finding an order to pay alimony "is not the type of subject matter the Thirteenth Amendment was designed to address" and while "Floridians who are required to pay alimony must

do so or face consequences, such as being held in contempt of court, … this does not amount to involuntary servitude").

### G.    Supervisory Defendants

Evans names Jess Irby (the Alachua County clerk of court), James Zingale (the FDOR's Executive Director), Ann Coffin (the FDOR's Child Support Program Director), and Clovis Watson, Jr. (the former Alachua County Sheriff) as Defendants.[7]   However, other than alleging these Defendants entered into certain contracts related to Florida's child support enforcement program, the complaint contains no well-pled factual allegations indicating these Defendants personally participated in any of the alleged constitutional violations.   And "[s]upervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability."  *Hardin v. Hayes*, 957 F.2d 845, 849 (11th Cir. 1992).   Thus, Evans cannot state a claim against any of these Defendants.[8]

---

[7] The complaint also contains allegations against Judge Wright but he is not named as a Defendant and, in any event, the claims against him fail for the same reasons the claims against Judge Groeb fail.  In addition, it is unclear how the execution of a writ of bodily attachment, even if the Sheriff's Office receives compensation for that task, violates the arrestee's constitutional rights. *See United States v. Phillips*, 2014 WL 12640944, at *5 (S.D. Fla. July 8, 2014) ("[T]he authority of law enforcement officers to make an arrest on a public street pursuant to a civil writ is no different from that under a felony warrant").

[8] Evans' complaint is also an impermissible shotgun pleading because it frequently alleges the "Defendants" collectively violated his rights without specifying what each Defendant did that was unlawful. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (explaining a complaint is a shotgun pleading when it asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against").

Case No. 1:26-cv-139-MW-HTC

## IV.   Conclusion

For the reasons set forth above, this action should be dismissed *sua sponte.* And, given the deficiencies identified above, any opportunity to amend would be futile.

Accordingly, it is RECOMMENDED that:

1.      This case be DISMISSED without prejudice.

2.      All pending motions be TERMINATED as moot.

3.      The clerk close this file.

At Pensacola, Florida, this 30th day of June, 2026.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14)** days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.